IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

KIRK L. ANDERSON,

    Petitioner,

v.                                                                       Civil Action No. **3:13CV528**

HAROLD W. CLARKE,

    Respondent.

## MEMORANDUM OPINION

Kirk L. Anderson, a Virginia state prisoner proceeding *pro se*, brings this petition pursuant to 28 U.S.C. § 2254 ("§ 2254 Petition") challenging his convictions in the Circuit Court of the City of Richmond, Virginia ("Circuit Court"). Respondent moves to dismiss, *inter alia*, on the ground that the one-year statute of limitations governing federal habeas petitions bars the § 2254 Petition. Despite sending appropriate *Roseboro*[1] notice with the Motion to Dismiss, Anderson has not responded, but instead filed a document entitled "Brief in Support of Motion To Hearing." (ECF No. 19.) The matter is ripe for disposition.

## I. PROCEDURAL HISTORY

After a bench trial, the Circuit Court found Anderson guilty of two counts of rape and two counts of indecent liberties. On July 26, 2010, the Circuit Court entered final judgment with respect to the above convictions and sentenced Anderson to an active sentence of thirty-three years in prison. *See* Petition for Writ of Habeas Corpus at 2, *Anderson v. Clarke*, No. CL12-2612 (Va. Cir. Ct. filed June 14, 2012). Anderson appealed his convictions. On August 1, 2011, the Supreme Court of Virginia refused Anderson's petition for appeal. *Anderson v. Commonwealth*, No. 110850, at 1 (Va. Aug. 1, 2011).

---

[1] *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975).

On June 14, 2012, Anderson filed a petition for a writ of habeas corpus in the Circuit Court. Petition for Writ of Habeas Corpus at 1, *Anderson v. Clarke*, No. CL12–2612 (Va. Cir. Ct. filed June 14, 2012). On October 9, 2012, the Circuit Court dismissed the petition. *Anderson v. Clarke*, No. CL12–2612, at 4 (Va. Cir. Ct. Oct. 9, 2012). On November 16, 2012, Anderson filed a notice of appeal with the Circuit Court. Notice of Appeal at 1, *Anderson v. Clarke*, No. CL12–2612 (Cir. Ct. filed Nov. 16, 2012).

Anderson filed his petition for appeal on January 11, 2013. Petition for Appeal at 1, *Anderson v. Clarke*, No. 130075 (Va. filed Jan. 11, 2013). On March 14, 2013, the Supreme Court of Virginia found "that the appeal was not perfected in the manner provided by law because the appellant failed to timely file a notice of appeal and petition for appeal" pursuant to Supreme Court of Virginia Rules 5:9(a) and 5:17(a)(1). *Anderson v. Clarke*, No. 130075, at 1 (Va. Mar. 14, 2013). The Supreme Court of Virginia also denied Anderson's petition for rehearing. *Anderson v. Clarke*, No. 130075, at 1 (Va. June 13, 2013).

On July 31, 2013,[2] Anderson filed his § 2254 Petition. In his § 2254 Petition, Anderson asserts:[3]

Claim One    "Fifth Amendment Violation, Double Jeopardy." (§ 2254 Pet. 6.)[4]

Claim Two    "Sixth Amendment, Ineffective Counsel." (*Id.* at 7.)

Claim Three  "5th and 14th Amendments, Insufficient Evidence." (*Id.* at 9.)

---

[2] Anderson filed an initial unsigned and unexecuted § 2254 petition, received by the Court on August 2, 2013. The envelope accompanying the petition is date stamped "RECEIVED IN THE MAILROOM JUL 31 2013 SUSSEX I STATE PRISON." (ECF No. 1–5, at 1.) The Court deems the § 2254 Petition filed as of that date. *See Houston v. Lack*, 487 U.S. 266, 276 (1988).

[3] In his supporting brief, Anderson renumbers his claims and separates the four claims listed in his § 2254 Petition into seven repetitive claims. Because the Court finds Anderson's § 2254 Petition untimely, the Court declines to subdivide the claims listed in his § 2254 Petition.

[4] The Court corrects the capitalization in the quotations from Anderson's submissions.

Claim Four  "14th Amendment, 5th Amendment[,] Void Sentence, Actual Innocence." (*Id.* at 11.)

## II. ANALYSIS

### A. Statute of Limitations

Respondent contends that the federal statute of limitations bars Anderson's claims. Section 101 of the Antiterrorism and Effective Death Penalty Act ("AEDPA") amended 28 U.S.C. § 2244 to establish a one-year period of limitation for the filing of a petition for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court. Specifically, 28 U.S.C. § 2244(d) now reads:

> 1. A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
>    (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
>    (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
>    (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
>    (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> 2. The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

## B. Commencement and Running of the Statute of Limitations

Anderson's judgment became final on Monday, October 31, 2011, when the time to file a petition for a writ of certiorari expired. *See Hill v. Braxton*, 277 F.3d 701, 704 (4th Cir. 2002) ("[T]he one-year limitation period begins running when direct review of the state conviction is completed or when the time for seeking direct review has expired . . . ." (citing 28 U.S.C. § 2244(d)(1)(A))); Sup. Ct. R. 13(1) (requiring that a petition for certiorari should be filed within ninety days of entry of judgment by state court of last resort or of the order denying discretionary review). The limitation period began to run on November 1, 2011, and 226 days of the limitation period elapsed before Anderson filed his state petition for a writ of habeas corpus on June 14, 2012. *See* 28 U.S.C. § 2244(d)(2).

## C. Statutory Tolling

To qualify for statutory tolling, an action must be a (1) properly filed (2) post-conviction or other collateral review of (3) the pertinent judgment. 28 U.S.C. § 2244(d)(2). "[A]n application is '*properly* filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings." *Artuz v. Bennett*, 531 U.S. 4, 8 (2000). These rules and laws "usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee." *Id.* (footnote omitted) (citing cases). A petition that is denied by a state court as untimely is not "properly filed" within the meaning of the AEDPA. *Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005) (citation omitted) ("When a postconviction petition is untimely under state law, that [is] the end of the matter for purposes of § 2244(d)(2)").

The Supreme Court of Virginia subsequently dismissed Anderson's notice of appeal and petition for appeal as untimely filed. *Anderson v. Clarke*, No. 130075, at 1 (Va. Mar. 14, 2013).

4

Because Anderson's appeal was not properly filed, *see Pace*, 544 U.S. at 417, Anderson lacks entitlement to statutory tolling for the period in which he pursued his untimely appeal. *See, e.g., Escalante v. Watson*, 488 F. App'x 694, 699 (4th Cir. 2012) (refusing to toll limitation period for the time period where the inmate's defective petition for appeal was pending before the Supreme Court of Virginia); *Hines v. Johnson*, No. 2:08cv102, 2009 WL 210716, at *2 (E.D. Va. Jan. 28, 2009) (precluding tolling the time between the state's denial of a habeas petition and the untimely petition for appeal of that decision); *Christian v. Baskerville*, 232 F. Supp. 2d 605, 607 (E.D. Va. 2001) ("[J]ust because a particular application is pending, does not mean that it was properly filed.").

Accordingly, the limitation period began to run on October 10, 2012, the day after the Circuit Court dismissed his state habeas, and Anderson had 139 days, or until February 26, 2013 to file his federal habeas petition. Anderson failed to file his federal habeas petition until July 31, 2013, more than five months after the limitation period expired. Neither Anderson nor the record suggests any plausible basis for a belated commencement of the limitation period under 28 U.S.C. § 2244(d)(1)(B)–(D) or equitable tolling.[5]

### D.   Actual Innocence

In his § 2254 Petition under Claim Four, Anderson states that he is actually innocent. (§ 2254 Pet. 11.) The Supreme Court has recognized actual innocence as a basis for overcoming the expiration of the statute of limitations. *See McQuiggin v. Perkins*, 133 S. Ct. 1924, 1928 (2013) (explaining that "actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar . . . or . . . expiration of the statute of limitations"). "Claims of actual innocence, whether presented as freestanding ones or

---

[5] At most, Anderson states "he disagree[s] with Respondent on timely matter . . . ." (Br. Supp. Mot. Hearing 1, ECF No. 19.)

merely as gateways to excuse a procedural default, should not be granted casually." *Wilson v. Greene*, 155 F.3d 396, 404 (4th Cir. 1998) (citations omitted).

Here, the Court reviews Anderson's arguments under the more lenient standard for gateway actual innocence claims, because subscribing to Anderson's actual innocence claims would permit the Court to consider the merits of his otherwise time-barred habeas petition. A gateway claim requires a petitioner to present "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). "Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful." *Id.* If a petitioner meets the burden of producing new, truly reliable evidence of his or her innocence, the Court then considers "'all the evidence,' old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under 'rules of admissibility that would govern at trial' "and determines whether the petitioner has met the standard for a gateway claim of innocence. *House v. Bell*, 547 U.S. 518, 538 (2006) (quoting *Schlup*, 513 U.S. at 327–28). The Court must determine "whether 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *Sharpe v. Bell*, 593 F.3d 372, 377 (4th Cir. 2010) (quoting *Schlup*, 513 U.S. at 327–28). "The Court need not proceed to this second step of the inquiry unless the petitioner first supports his or her claim with evidence of the requisite quality." *Hill v. Johnson*, No. 3:09cv659, 2010 WL 5476755, at *5 (E.D. Va. Dec. 30, 2010) (citing *Weeks v. Bowersox*, 119 F.3d 1342, 1352–53 (8th Cir. 1997); *Feaster v. Beshears*, 56 F.Supp.2d 600, 610 (D. Md. 1999)). Moreover, "actual innocence" means factual innocence and not just legal insufficiency. *See Calderon v. Thompson*, 523 U.S.

538, 559 (1998) (citations omitted) (internal quotation marks omitted) ("[T]he miscarriage of justice exception is concerned with actual as compared to legal innocence.")

Anderson vaguely asserts that he is actually innocent. However, Anderson directs the Court to no new reliable evidence of his innocence. Therefore, he fails to establish that his alleged actual innocence permits the Court to reach the merits of his time-barred § 2254 Petition.

Moreover, ample evidence exists of Anderson's guilt of the two rape and two indecent liberties convictions. As the Court of Appeals of Virginia aptly found:

> [T]he evidence proved that in June 2009, C.E., then thirteen years old, spent time at her grandparents' house. Appellant, the brother of C.E.'s grandfather's wife, also lived at the residence and C.E. often referred to appellant as "Uncle Kirk." C.E. testified she was alone at the house one day in June, washing dishes. Appellant arrived, went upstairs to C.E.'s cousin's room, and in a "mean voice" ordered C.E. to come upstairs. C.E. obeyed, entered the room, and attempted to fix the television set as appellant had requested. Appellant asked C.E. if she knew "how to kiss." C.E. stated she felt scared. Appellant then ordered her to "pull [her] clothes down." C.E. explained that she complied because she was scared "[t]hat [appellant] was going to do something to [her] or something to hurt [her] family."
> 
> Appellant turned C.E. around and pushed her towards the floor, bending her body over at her waist. Appellant inserted his penis into C.E.'s vagina and pulled her back and forth in a fast manner while holding onto her waist. C.E. testified that appellant was armed with a knife and she was afraid he would hurt her with it. She did not immediately report the rape because she was afraid appellant would harm her grandfather. Appellant instructed C.E. that if she told anyone what happened she could get hurt. C.E. testified her vagina hurt for a long time during and after the rape.
> 
> C.E. avoided all contact with appellant, but returned weeks later to her grandparents' house after confirming appellant would not be at the residence. At approximately 3:00 a.m. on June 26, 2009, however, appellant unexpectedly returned to the house. C.E. stated appellant was cursing and mumbling under his breath. She pretended to be asleep and feared he was going to "do something violent to [her]." Appellant stood over C.E. calling her name until she opened her eyes. He nodded his head, and C.E. pulled the covers back "[b]ecause [she] knew what he wanted." C.E. attempted to wake her cousin but was unsuccessful. She did not scream or yell "[b]ecause [she] was scared." Appellant again inserted his penis into C.E.'s vagina.
> 
> The following morning, C.E. reported the incident to her mother. C.E.'s mother testified C.E. was crying and had difficulty communicating. She took C.E. to a hospital where C.E. was examined by a nurse practitioner. The nurse

testified that C.E. exhibited injuries consistent with vaginal intercourse, including a complete tear of her hymen. The nurse also testified the hymen is less likely to tear unless force is used and "if [sexual intercourse] is consensual, it is more likely not to tear."

### Rape

Appellant argues the Commonwealth failed to demonstrate "there was force, threat or intimidation."

The indictment charged a crime under Code § 18.2–61, which provides, in pertinent part, that "[i]f any person has sexual intercourse with a complaining witness . . . and such act is accomplished . . . against the complaining witness's will, by force, threat or intimidation of or against the complaining witness . . . he . . . shall be guilty of rape." Defining these elements, the Supreme Court has explained that, "in the context of [a prosecution for] sexual crimes, an act undertaken against a victim's will and without the victim's consent is an act undertaken with force." *Martin v. Commonwealth*, 272 Va. 31, 35, 630 S.E.2d 291, 292 (2006). In other words, one inquiry to be made "is whether the act or acts were effected with or without the victim's consent." *Jones v. Commonwealth*, 219 Va. 983, 986, 252 S.E.2d 370, 372 (1979). The other elements are as follows:

> As used in the statute, threat means expression of an intention to do bodily harm. Intimidation may occur without threats. Intimidation, as used in the statute, means putting a victim in fear of bodily harm by exercising such dominion and control of her as to overcome her mind and overbear her will. Intimidation may be caused by the imposition of psychological pressure on one who, under the circumstances, is vulnerable and susceptible to such pressure.

*Sutton v. Commonwealth*, 228 Va. 654, 663, 324 S.E.2d 665, 670 (1985). Whether the accused used force, threat, or intimidation "to overcome the victim's will is a factual question, and this Court defers to the fact finder's decision unless plainly wrong." *Sabol v. Commonwealth*, 37 Va. App. 9, 17, 553 S.E.2d 533, 537 (2001).

In this case, even if appellant did not make any direct threats of bodily harm to C.E., he used intimidation to overcome C.E.'s will. To begin, C.E.'s testimony regarding her fear and pain before and during both rapes was sufficient to establish her "fear of bodily harm" because it is "common knowledge" that rape is a "violent act[,] ... inflict[ing] bodily hurt on the victim." *Commonwealth v. Bower*, 264 Va. 41, 45, 563 S.E.2d 736, 738 (2002). In addition, the fact finder may consider other factors, such as "the victim's age, the relative size of the defendant and victim, the familial relationship between the defendant and victim, and the vulnerable position of the victim." *Id.* at 46, 563 S.E.2d at 738. The evidence shows thirteen–year–old C.E. had known appellant for a period of years and referred to appellant — thirty-nine years older than herself — as her uncle. Appellant committed the first rape when C.E. was alone in the house and committed the second rape when everyone else was asleep. Appellant was bigger and stronger than C.E. and was armed with a knife. He used a tone of voice — inconsistent with his usual demeanor — that scared C.E. and caused her to believe

appellant would hurt her if she did not comply with his demands. C.E.'s fear of appellant continued after the first rape, causing her to avoid her grandparents' house for weeks, returning only after confirming appellant would not be there. Believing appellant's threat that she could get hurt if she told anyone what had happened, and knowing appellant was angry and carrying a knife, C.E.'s fear that appellant would hurt her or her family prevented her from yelling or screaming out for help during the second rape.

Appellant also used force in committing the rapes of C.E. C.E.'s testimony that appellant bent her body over and moved her body back and forth in a fast manner that caused her to suffer extreme pain, corroborated by the nurse's testimony that C.E.'s injuries were inconsistent with consensual intercourse, was sufficient to establish appellant used excessive force against C.E. *See Clark v. Commonwealth*, 30 Va. App. 406, 410, 517 S.E.2d 260, 261 (1999) (holding, in the context of aggravated sexual battery, that the defendant's act of lying on top of the victim was more force than required to accomplish the unlawful act).

Appellant argues his conviction should not stand because C.E. "never struggled, said no, or ran away" or otherwise resisted the sex acts. C.E. was not required, however, to "'resist to the utmost of her physical strength, if she reasonably believe[d] resistance would be useless and result in serious bodily injury to her.'" *Jones*, 219 Va. at 986, 252 S.E.2d at 372 (quoting *Davis v. Commonwealth*, 186 Va. 936, 946, 45 S.E.2d 167, 171 (1947)). In fact, C.E. need not have positively resisted at all "if it appears that the crime was effected without her consent," *id.* (citing *Mingo v. Commonwealth*, 85 Va. 638, 640, 8 S.E. 474, 475 (1889)), and it has long been said that "[s]ubmission through fear to sexual intercourse is not consent," *Sutton*, 228 Va. at 663, 324 S.E.2d at 670 (citing *Bailey v. Commonwealth*, 82 Va. 107 (1886)). Considering all the evidence, including the testimony, C.E.'s "age, the relative size of [appellant and C.E.], the familial relationship between [appellant and C.E.], and the vulnerable position of [C.E.]," *Bower*, 264 Va. at 46, 563 S.E.2d at 738, this Court finds ample support for the trial court's conclusion that appellant accomplished the sexual intercourse against C.E.'s will through the use of force, threats, or intimidation.

*Anderson v. Commonwealth*, No. 1725-10-2, at 1-5 (Va. Ct. App. Apr. 13, 2011) (alterations in original). Thus, the statute of limitations bars Anderson's § 2254 Petition.

### III. CONCLUSION

For the foregoing reasons, Respondent's Motion to Dismiss (ECF No. 14) will be GRANTED. Anderson's petition for relief under 28 U.S.C. § 2254 will be DENIED. The action will be DISMISSED.[6]

---

[6] An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A). A COA will not issue

An appropriate Final Order shall issue.

/s/ [signature]
John A. Gibney, Jr.
United States District Judge

Date: 6/26/14
Richmond, Virginia

---

unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). Anderson fails to meet this standard. Accordingly, a certificate of appealability will be DENIED.